United States District Court
Middle District of Florida
Jacksonville Division

**HELEN HARRIETTA HEAD,**

      *Plaintiff,*

v.                                  **NO. 3:15-CV-570-J-34PDB**

**COMMISSIONER OF SOCIAL SECURITY,**

      *Defendant.*

---

## Report & Recommendation

Helen Harrietta Head appeals the Commissioner's denial of her claims for disability-insurance benefits and supplemental-security income. Doc. 1. The Court has jurisdiction to decide the appeal under 42 U.S.C. §§ 405(g) and 1383(c)(3).[1] The parties briefed their respective positions. Docs. 15, 18. Head seeks reversal and remand; the Commissioner, affirmance.

### I.    Background

Head was born in 1968. Tr. 43, 212.[2] She finished some college. Tr. 43, 44, 351. She has worked in various positions, including as a cashier, surgical technician, and

---

[1]Section 405(g) provides district-court jurisdiction over final agency decisions concerning disability-insurance benefits. Section 1383(c)(3) incorporates § 405(g) for final agency decisions concerning supplemental-security income.

[2]The Commissioner filed nearly the same transcript twice. *See* Docs. 12, 13. The second-filed one redacts documents at pages 907 to 944 because they concern a different claimant.

Mary Kay Consultant. Tr. 226–31, 259–60, 267, 302, 351. She stopped working in July 2012. Tr. 44, 48. For disability-insurance benefits, she is eligible through 2017. Tr. 26.

Head applied for disability-insurance benefits in July 2010. Tr. 210–11. She alleged she had become disabled in May 2008 or May 2009.[3] Tr. 210 (application summary listing May 17, 2008, as alleged onset date), 254 (field office report listing May 17, 2009, as alleged onset date). As conditions that limit her ability to work, she listed depression, migraines, and sleep apnea. Tr. 258. The Social Security Administration ("SSA") denied the application at the initial level of administrative review in December 2010.[4] Tr. 346. She did not proceed to the next level. Tr. 346.

Head applied for disability-insurance benefits and supplemental-security income in March 2012. Tr. 212–24. (These applications are the ones at issue in this action.) She alleged she had become disabled in May 2009. Tr. 218. As conditions that

---

[3]"Disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which … can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *accord* 42 U.S.C. § 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). To obtain benefits, a social-security claimant must prove she is disabled. 20 C.F.R. §§ 404.1512, 416.912.

[4]The SSA uses an administrative review process a claimant ordinarily must follow to receive benefits or judicial review of her denial. *Bowen v. New York*, 476 U.S. 467, 471–72 (1986). A state agency acting under the Commissioner's authority makes an initial determination. 20 C.F.R. §§ 404.900–404.906, 416.1400–416.1406. If the claimant is dissatisfied with the initial determination, she may ask for reconsideration. 20 C.F.R. §§ 404.907–404.918, 416.1407–416.1418. If she is dissatisfied with the reconsideration determination, she may ask for a hearing before an ALJ. 20 C.F.R. §§ 404.929–404.943, 416.1429–416.1443. If she is dissatisfied with the ALJ's decision, she may ask for review by the Appeals Council. 20 C.F.R. §§ 404.967–404.982, 416.1466–416.1482. If the Appeals Council denies review, she may file an action in federal district court. 20 C.F.R. §§ 404.981, 416.1481.

limit her ability to work, she listed depression with migraines, sleep apnea, human immunodeficiency virus (HIV), incontinence, gastro esophageal reflux disorder (GERD), and short-term memory loss. Tr. 350. (Because she does not challenge findings concerning her physical impairments, the remainder of this report and recommendation discusses only findings concerning her mental impairments.)

The SSA denied the applications at the initial level and denied her request for reconsideration. Tr. 140–52, 155–67. She asked for a hearing before an Administrative Law Judge ("ALJ"). Tr. 166–67. The ALJ conducted a hearing in October 2013 at which she and a vocational expert testified. Tr. 39–62. During the hearing, through counsel, she amended the alleged onset date to July 2012 because she had been selling Mary Kay products until then. Tr. 45–46. She also added hepatitis C to the impairments listed in her applications. Tr. 50. In a January 2014 decision, the ALJ found no disability. Tr. 24–32.

Head requested Appeals Council review and provided new evidence.[5] Tr. 4, 16–17, 448–50, 1006–09. The Appeals Council denied review. Tr. 1–5. This case followed. Doc. 1.

## II.   Record

### A.   *Allison Keiter, Psy.D. (December 2010)*

Allison Keiter, Psy.D., is psychologist with IMA Evaluations, Inc. Tr. 517. She examined Head in December 2010 when Head's previous application was under

---

[5]With limited exceptions, a claimant may present new evidence at each stage of the administrative process, including before the Appeals Council. 20 C.F.R. §§ 404.900(b), 416.1400(b).

review. Tr. 517–21. She noted poor eye-contact and flat affect but otherwise normal observations. Tr. 518–19. She diagnosed adjustment disorder with depressed mood and assigned a Global Assessment of Functioning ("GAF") rating of 75.[6] Tr. 520. She opined Head can deal appropriately with stress, understand and follow simple directions, perform simple and more complex tasks independently, maintain attention and concentration, adhere to a regular schedule, and learn new tasks but may "have difficulties at times making appropriate decisions and relating adequately with others." Tr. 520. She recommended Head continue to see a psychiatrist. Tr. 521. She opined her prognosis was fair "given her current level of functioning and medication management." Tr. 521.

---

[6]The former version of AMERICAN PSYCHIATRIC ASSOCIATION, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS (4th ed. 2000), explains the GAF scale is used by mental-health practitioners to report "the clinician's judgment of the individual's overall level of functioning" and "may be particularly useful in tracking the clinical progress of individuals in global terms, using a single measure." MANUAL at 32–34. The GAF scale is divided into 10 ranges of functioning, each with a 10-point range in the GAF scale. *Id.* A GAF rating of 21 to 30 indicates behavior considerably influenced by delusions or hallucinations, or serious impairment in communication or judgment, or inability to function in almost all areas. *Id.* at 34. A GAF rating of 31 to 40 indicates some impairment in reality testing or communication or major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood. *Id.* A GAF rating of 41 to 50 indicates serious symptoms or any serious impairment in social, occupational or school functioning. *Id.* A GAF rating of 51 to 60 indicates moderate symptoms or moderate difficulty in social, occupational, or school functioning. *Id.* A GAF rating of 61 to 70 indicates some mild symptoms or some difficulty in social, occupational, or school functioning, but generally functioning pretty well. *Id.* The latest edition of the Manual has abandoned the GAF scale because of "its conceptual lack of clarity … and questionable psychometrics in routine practice." AMERICAN PSYCHIATRIC ASSOCIATION, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 16 (5th ed. 2013).

### B.   Eric Wiener, Ph.D. (April 2012)

Eric Wiener, Ph.D., conducted a "Psychiatric Review Technique" assessment of Head in April 2012 when her current applications were under review. Tr. 76–90. He opined her affective disorders are severe and she has moderate difficulties in maintaining concentration, persistence, or pace. Tr. 76, 77, 89, 90. For her mental residual functional capacity, he opined she is moderately limited in her ability to carry out detailed instructions, moderately limited in her ability to maintain attention and concentration for extended periods, and limited to routine tasks with brief lapses of focus. Tr. 80, 93. He found no disability based on the residual functional capacity and other factors. Tr. 83, 96.

### C.   Mike Dow, Ph.D. (July 2012)

Mike Dow, Ph.D., conducted a "Psychiatric Review Technique" assessment of Head in July 2012 when her current applications were under review. Tr. 108–12. He opined Head's affective disorders are severe and she has moderate difficulties in maintaining concentration, persistence, or pace. Tr. 108. For her mental residual functional capacity, he opined she is moderately limited in her ability to carry out detailed instructions, moderately limited in her ability to maintain attention and concentration for extended periods, and limited to routine tasks with brief lapses of focus. Tr. 112. He found no disability based on the residual functional capacity and other factors. Tr. 115.

**D.      Stephanie Sims, M.D. (February 2013 to November 2014)**

Stephanie Sims, M.D., is a psychiatrist with the University of Florida. Tr. 751, 753, 755, 1009. Head saw Dr. Sims several times when her current applications were under review (five times before the ALJ's January 2014 decision and three times after). Tr. 1006. At a February 2013 appointment, Dr. Sims observed, "This is an alert, obese 44 [year old female]. She is cooperative but guarded. Her movements are normokinetic. Her speech is clear. Her mood is 'depressed' and her affect is constricted. Her thought processes are linear. … Her insight [and] judgment are fair." Tr. 751. Dr. Sims diagnosed Head with depression (not otherwise specified) and generalized anxiety disorder (rule out psychotic disorder), prescribed medications, and assigned a GAF rating of 55. Tr. 752. At a March 2013 appointment, Dr. Sims made similar notes but added Head's reports of feeling better though overly energetic and overly talkative. Tr. 753–54. Dr. Sims diagnosed her with mood disorder (not otherwise specified) and general anxiety disorder (rule out psychotic disorder), again assigned a GAF rating of 55, increased her prescription dosage, and opined her prognosis was poor to fair. Tr. 754. Dr. Sims made similar observations and findings at a September 2013 appointment. Tr. 755–56. In a November 2014 "Mental Residual Functional Capacity Questionnaire" completed after the ALJ's decision and submitted to the Appeals Council, Dr. Sims opined Head has numerous significant mental limitations that would affect her ability to work. Tr. 1, 4, 5, 1006–09.

**E.      Raymond M. Pomm, M.D. (May 2012 to October 2012)**

Raymond Pomm, M.D., is a psychiatrist with River Region Human Services,

Inc. Tr. 682. Head saw a counselor there, Dianne Mollica, L.M.H.C., in February and April 2012, and followed up for medication management with Dr. Pomm in May, June, July, and October 2012, when her current applications were under review. Tr. 678, 681–683, 950, 951. In a February 2012 psychological assessment, Mollica stated her impression based on Head's reporting of symptoms that Head had major depression disorder (recurrent) and opined her "functional limitations that need to be addressed include: low self-esteem issues, a chronic major illness, and chronic major depression." Tr. 678. Mollica provided her with a treatment plan that included prescription medication. Tr. 679–80. In an April 2012 treatment-plan reassessment, Mollica noted no apparent new issues or concerns and recommended continuation of the plan. Tr. 683–84. At the May and June appointments, Dr. Pomm noted a sad affect and a depressed mood but otherwise normal observations. Tr. 681, 682. At the July appointment, Dr. Pomm noted slow speech, a sad affect, and a depressed mood but otherwise normal observations. Tr. 950. He added Head was responding to medication without experiencing side effects but her sleep was "severely disturbed." Tr. 950. At the October appointment, Dr. Pomm (or someone in his office) noted poor eye-contact, slow speech, an angry mood, and a sad, flat, and angry affect but otherwise normal observations.[7] Tr. 951.

---

[7]As Head observes, it is unclear who she saw during the October 2012 appointment. Doc. 15 at 6 n.5. Dr. Pomm's name is typed on the notes but the handwriting and signature are different from those on other notes he wrote. *Compare, e.g.* Tr. 951 *with* Tr. 681, 682, *and* 950.

### III. ALJ's Decision[8]

At step one,[9] the ALJ found Head has not engaged in substantial gainful activity since the July 2012 amended alleged onset date. Tr. 26.

At step two, the ALJ found Head has severe impairments of HIV, migraines, GERD, and hepatitis C. Tr. 26. He identified only affective disorder as a "medically determinable mental impairment," but found it not severe. Tr. 27. In making that finding, he conducted the psychiatric review technique in 20 C.F.R. §§ 404.1520a and 416.920a, assessing whether she had limitations from mental impairments based on the "paragraph B" criteria: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation, 20 C.F.R. Part 404, Subpart P, App'x 1, §§ 12.04(B), 12.06(B). Tr. 27. He found she has no limitation under any of the first three criteria and has had no episode of decompensation. Tr. 27.

The ALJ included in his decision standard language concerning the effect of mental limitations identified in an analysis of the paragraph B criteria:

> The limitations identified in the "paragraph B" criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3. … The mental residual

---

[8]If the Appeals Council denies review, the ALJ's decision is the SSA's final decision. 20 C.F.R. §§ 404.981, 416.1481.

[9]The SSA uses a five-step sequential process to decide if a person is disabled, asking: (1) if she is engaged in substantial gainful activity; (2) if she has a severe impairment or combination of impairments; (3) if the impairment meets or equals the severity of anything in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, App'x 1; (4) if, given her residual functional capacity, she can perform any of her past relevant work; and (5) if, given her residual functional capacity, age, education, and work experience, there are a significant number of jobs in the national economy she can perform. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraph B. … Therefore, the following residual functional capacity assessment reflects the degree of limitation the undersigned has found in the "paragraph B" mental function analysis.

Tr. 27.

To explain his findings, the ALJ stated he had given "great weight" to Dr. Keiter's December 2010 evaluation. Tr. 27. The following is the ALJ's entire discussion of Dr. Keiter:

Allison Keiter, Psy.D., performed a psychological evaluation on the claimant on December 15, 2010. At the exam, the claimant's mood was neutral and her affect was flat. According to Dr. Keiter, vocationally, the claimant is able to follow and understand simple and more complex tasks independently. She is able to maintain attention, concentration, and a regular schedule, and learn simple tasks. She may have difficulties at times making appropriate decisions and relating adequately with others. She is able to deal appropriately with stress. Dr. Keiter diagnosed the claimant with adjustment disorder with depressed mood. Dr. Keiter assigned the claimant a … GAF … score of 75. A GAF score of 75 indicates if symptoms are present, there are transient and expectable reactions to psycho-social stressors …; [and] no more than slight impairment in social, occupational, or school functioning …. Although the GAF score alone is not conclusive of the claimant's mental health, it is a useful tool to determine how the claimant is functioning. In this case, the claimant's GAF score appears consistent with the claimant's presentation at the hearing that she does not have a mental health severe impairment. Dr. Keiter's opinion is given great weight because it is consistent with the medical evidence, presentation and testimony of the claimant as discussed in detail below.[10]

---

[10]At the hearing, Head's counsel told the ALJ she has been treated for depression and anxiety. Tr. 49. The ALJ asked her only about depression (specifically, why she was being treated for it), and she responded she has suffered from it for a long time. Tr. 52–53. Insofar as neither Head nor her counsel ever disclaimed that she suffers from a mental impairment, the ALJ's statement, "claimant's presentation at the hearing that she does not have a mental health severe impairment," Tr. 27, presumably means he found she did not appear to have a mental impairment from his hearing observations. An ALJ is not prohibited from considering a claimant's

Tr. 27 (internal citations omitted).

The ALJ stated he had given "little weight" to Dr. Sims's February 2013 GAF

scale rating of 55.[11] Tr. 28. The following is the ALJ's entire discussion of Dr. Sims:

> In February 2013, the claimant went to the University of Florida
> Psychiatry Clinic with symptoms of depression, anxiety, and possible
> delusional thought content. Stephanie Sims, M.D., diagnosed depression
> and assigned a GAF score of 55, which indicates moderate symptoms.
> Dr. Sims noted that the claimant was stable for outpatient psychiatric
> treatment. In March 2013, and the next visit in September 2013, Dr.
> Sims continued to note the claimant was stable for outpatient
> psychiatric treatment. The GAF score assigned to the claimant by Dr.
> Sims is given little weight.

Tr. 28 (internal citations omitted).

The ALJ stated he had given "little weight" to Dr. Wiener's April 2012

"Psychiatric Review Technique" assessment and to Dr. Dow's July 2012 "Psychiatric

Review Technique" assessment. Tr. 28. The following is the ALJ's entire discussion

of Drs. Wiener and Dow:

> On April 27, 2012, Eric Wiener, Ph.D., and on July 2, 2012, Mike Dow,
> Ph.D., consultants for the State agency prepared Psychiatric Review
> Technique (PRT) assessments and concluded that affective disorder was

---

appearance and demeanor during a hearing. *Macia v. Brown*, 829 F.2d 1009, 1011
(11th Cir. 1987).

[11]A treating source is a physician, psychologist, or other acceptable medical
source who provides medical treatment or evaluation to the claimant and who has, or
has had, an ongoing treatment relationship with the claimant, as established by
medical evidence showing that the claimant sees or has seen the physician with a
frequency consistent with accepted medical practice for the treatment or evaluation
required for the medical condition. 20 C.F.R. §§ 404.1502, 416.902. An ALJ "may
consider an acceptable medical source who has treated or evaluated [a claimant] only
a few times" a treating source "if the nature and frequency of the treatment or
evaluation is typical for [the claimant's] condition(s)." *Id.* Head contends Dr. Sims is
a treating source, *see* Doc. 15 at 12−13, and the Commissioner does not contend
otherwise, *see generally* Doc. 18 at 4−21.

a severe impairment. The opinions of Drs. Weiner [sic] and Dow are given little weight. The undersigned finds that affective disorder is a non-severe impairment. The undersigned does agree with Drs. Weiner [sic] and Dow that the claimant is not disabled.

Tr. 28 (internal citations omitted).

The ALJ did not mention Dr. Pomm or Mollica (the licensed mental health counselor). *See generally* Tr. 24–32.

At step three, the ALJ found Head has no impairment or combination of impairments that meets or medically equals the severity of anything in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, App'x 1.[12] Tr. 28. He stated he had given particular consideration to listings 5.00 ("Digestive System"), 11.00 ("Neurological"), and 14.00 ("Immune System Disorders"). Tr. 28. He explained the medical records do not demonstrate satisfaction of the criteria for those listings and no physician "has mentioned findings equivalent in severity to the criteria." Tr. 28.

The ALJ found Head has the residual functional capacity to perform light work with no mental limitation.[13] Tr. 28. The ALJ summarized the medical evidence concerning her physical impairments and Head's testimony.[14] Tr. 29–31. The ALJ

---

[12]The Listing of Impairments "describes for each of the major body systems impairments that [the SSA] consider[s] to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." 20 C.F.R. §§ 404.1525(a), 416.925(a).

[13]"Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. " 20 C.F.R. §§ 404.1567(b), 416.967(b).

[14]Within the ALJ's summary of the medical evidence concerning Head's physical impairments, he states, "On June 27, 2012, Christina Rodriguez, M.D., a consultant for the State agency prepared a Physical Residual Functional Capacity

observed her father had completed a September 2010 "Third Party Function Report." Tr. 31 (referencing 322–32). About the report, the ALJ stated, "When the Function Reports [sic] were completed even though they include limitations, the claimant was self-employed and able to work." Tr. 31.

At step four, the ALJ found Head can perform past relevant work of "Salesperson, Cosmetics" (Dictionary of Occupational Titles ("DOT") 262.357-018; semi-skilled),[15] "Surgical Technician" (DOT 079.374-022; skilled),[16] and "General

---

Assessment …. Dr. Rodriguez found [she can] do a full range of medium work, with mental limitations." Tr. 30. The ALJ does not explain the mental limitations, *see generally* Tr. 30, and the parties do not mention any by Dr. Rodriguez or make any argument concerning Dr. Rodriguez in their briefs, *see generally* Docs. 15, 18. The ALJ may have been referencing Dr. Dow's opinions on mental limitations. *See* Tr. 102–16. In the absence of argument concerning Dr. Rodriguez, this report and recommendation does not discuss her opinions or any error by the ALJ concerning them. *See* Doc. 14 (scheduling order advising parties the Court will deem waived any issue that the plaintiff does not raise or fully brief unless the interests of justice require its consideration).

[15]"Semi-skilled work is work which needs some skills but does not require doing the more complex work duties. Semi-skilled jobs may require alertness and close attention to watching machine processes; or inspecting, testing or otherwise looking for irregularities; or tending or guarding equipment, property, materials, or persons against loss, damage or injury; or other types of activities which are similarly less complex than skilled work, but more complex than unskilled work." 20 C.F.R. §§ 404.1568(b), 416.968(b).

[16]"Skilled work requires qualifications in which a person uses judgment to determine the machine and manual operations to be performed in order to obtain the proper form, quality, or quantity of material to be produced. Skilled work may require laying out work, estimating quality, determining the suitability and needed quantities of materials, making precise measurements, reading blueprints or other specifications, or making necessary computations or mechanical adjustments to control or regulate the work. Other skilled jobs may require dealing with people, facts, or figures or abstract ideas at a high level of complexity." 20 C.F.R. §§ 404.1568(c), 416.968(c).

Clerk" (DOT 209.562-010; semi-skilled).[17] Tr. 31. Thus, the ALJ found no disability without proceeding to step five.[18] Tr. 31–32.

## IV.    Appeals Council's Decision

In denying Head's review request, the Appeals Council stated it had considered the new evidence provided (Dr. Sims's November 2014 "Mental Residual Functional Capacity Questionnaire" opining Head has numerous significant mental limitations that would affect her ability to work). Tr. 1, 4, 5, 1006–09. The Appeals Council explained, "We considered whether the Administrative Law Judge's action, findings, or conclusion is contrary to the weight of the evidence of record. We found that this information does not provide a basis for changing the [ALJ's] decision." Tr. 2.

## V.    Standard of Review

A court's review of a final decision by the Commissioner is limited to determining whether she applied the correct legal standards and whether substantial evidence supports the findings. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). Substantial evidence is "less than a preponderance"; it is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* The court may not decide facts anew, reweigh evidence, make credibility determinations, or substitute its judgment for the Commissioner's judgment. *Id.*

---

[17]"Past relevant work is work [a claimant has] done within the past 15 years, that was substantial gainful activity, and that lasted long enough … to learn to do it." 20 C.F.R. §§ 404.1560(b)(1), 416.960(b)(1).

[18]Under the five-step sequential process, if the SSA finds disability or no disability at a step, it will "not go on to the next step." 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

## VI.   Issues

Head raises three issues: (1) whether the ALJ, at step two, applied the correct legal standards for evaluating mental-impairment severity and whether substantial evidence supports his finding of no severe mental impairment, Doc. 15 at 9−11; (2) whether the ALJ applied the correct legal standards for evaluating medical opinions, *id.* at 11−16; and (3) whether the Appeals Council applied the correct legal standards for evaluating new evidence, *id.* at 16−20.

## VII.   Analysis

Because the second issue warrants reversal and remand, the Court need not rule on the first and third issues. (In other words, the weight the ALJ gives the medical opinions and reasons for that weight could affect whether Head has a severe mental impairment and whether any mental limitation should be included in the residual functional capacity (issue one) and the new evidence submitted to the Appeals Council may be considered with the rest of the record on remand (issue three).)[19] The remainder of this report and recommendation therefore addresses the second issue only.

Head argues the ALJ failed to sufficiently state the weight he was giving the medical opinions and the reasons for that weight, pointing to the ALJ's discussion of

---

[19]"When a Federal court remands a case to the Commissioner for further consideration, the Appeals Council, acting on behalf of the Commissioner, may make a decision, or it may remand the case to an [ALJ] with instructions to take action and issue a decision or return the case to the Appeals Council with a recommended decision." 20 C.F.R. §§ 404.983, 416.1483. The ALJ may consider any issue relating to the claim even if not "raised in the administrative proceedings leading to the final decision." 20 C.F.R. §§ 404.983, 416.1483.

the opinions of Drs. Keiter, Sims, Wiener, and Dow. Doc. 15 at 11–16. The Commissioner disagrees. Doc. 18 at 9–16.

To evaluate a mental impairment, an ALJ must apply the psychiatric review technique in 20 C.F.R. §§ 404.1520a and 416.920a, which requires an assessment of a claimant's limitations from mental impairments identified in the "paragraph B" criteria (activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation) and the extent of any limitation in the first three areas (none, mild, moderate, marked, or severe). 20 C.F.R. §§ 404.1520a(a) & (c), 416.920a(a) & (c). An ALJ's "written decision must incorporate the pertinent findings and conclusions based on the technique." 20 C.F.R. §§ 404.1520a(e)(4), 416.920a(e)(4). "The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s)." 20 C.F.R. §§ 404.1520a(e)(4), 416.920a(e)(4).

"Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of … impairment(s), including … symptoms, diagnosis and prognosis, what [one] can still do despite impairment(s), and … physical or mental restrictions."[20] 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2). Regardless of its source, the SSA "will evaluate every

---

[20]"Acceptable medical sources" are physicians, licensed or certified psychologists, licensed optometrists, licensed podiatrists, and qualified speech-language pathologists. 20 C.F.R. §§ 404.1513(a), 416.913(a). Evidence from a non-acceptable medical source may be used to show the severity of an impairment and how it affects a claimant's ability to work. 20 C.F.R. §§ 404.1513(d), 416.913(d).

medical opinion" it receives. 20 C.F.R. §§ 404.1527(c), 416.927(c).

The SSA generally will give more weight to the medical opinions of treating sources because they "are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). An ALJ need not give more weight to a treating source's opinion if there is good cause to do otherwise and substantial evidence supports the good cause. *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004). Good cause exists if the evidence did not bolster the opinion, the evidence supported a contrary finding, or the opinion was conclusory or inconsistent with the treating source's own medical records. *Id.* at 1240−41.

Unless the SSA gives a treating source's opinion controlling weight, it will consider several factors to decide the weight to give a medical opinion: examining relationship, treatment relationship, supportability, consistency, specialization, and any other relevant factor. 20 C.F.R. §§ 404.1527(c), 416.927(c). "[O]pinions of nonexamining, reviewing physicians … when contrary to those of [] examining physicians, are entitled to little weight, and standing alone do not constitute substantial evidence." *Sharfarz v. Bowen*, 825 F.2d 278, 280 (11th Cir. 1987).

An ALJ "must state with particularity the weight given to different medical opinions and the reasons therefor." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011). "In the absence of such a statement, it is impossible for a

reviewing court to determine whether the ultimate decision on the merits of a claim is rational and supported by substantial evidence." *Id.* Furthermore, because mental impairments can combine with physical impairments to create disability, 20 C.F.R. §§ 404.1523, 416.923, "an ALJ must make specific and well-articulated findings as to the effect of the combination of impairments when determining whether an individual is disabled," *Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir. 1993).

Here, application of those standards warrants reversal and remand. Regarding medical opinions on mental impairments, in finding no limitation under the paragraph B criteria and including no mental limitation in the residual functional capacity, the ALJ stated his reliance on the opinions of consultative examiner Dr. Keiter in her December 2010 psychological evaluation, his exclusion of the GAF ratings of treating source Dr. Sims in her February, March, and September 2013 treatment notes, and his exclusion of the opinions of state agency consultant Dr. Wiener in his April 2012 assessment and state agency consultant Dr. Dow in his July 2012 assessment.[21] Tr. 27–31.

Regarding consultative examiner Dr. Keiter's opinions, although the ALJ stated he was giving them "great weight," he did not explain how they—made in December 2010 when her first application was under consideration—could be given

---

[21]Head does not contend the ALJ's failure to mention Dr. Pomm or Mollica (the licensed mental health counselor) is reversible error. *See generally* Doc. 15 at 1–20. In the absence of argument concerning Dr. Pomm or Mollica, this report and recommendation does not discuss whether any errors concerning them would warrant reversal and remand. *See* Doc. 14 (scheduling order advising parties the Court will deem waived any issue that the plaintiff does not raise or fully brief unless the interests of justice require its consideration).

great weight—indeed, exclusive weight—in determining Head's mental impairments at the relevant time—after the July 2012 alleged amended onset date. *See generally* Tr. 27. Dr. Keiter explained her December 2010 opinion of Head's prognosis was based on her "**current** level of functioning and medication management." Tr. 521 (emphasis added). Furthermore, the ALJ did not explain why, despite giving Dr. Keiter's opinions exclusive weight, he was rejecting (or at least not incorporating) her opinions concerning Head's mental limitations (ability to understand and follow simple directions[22] and possible "difficulties at times making appropriate decisions and relating adequately with others," Tr. 520).[23]

---

[22]Dr. Keiter's opinion Head could follow simple directions implies her opinion Head could not follow more difficult instructions because, where Head could do something both simple and complex, Dr. Keiter said so. *See* Tr. 520 (opining Head can perform "simple and more complex tasks independently").

[23]Much of the ALJ's explanation of the weight given to Dr. Keiter's opinions involved her GAF rating of 75. Tr. 27. Following the DSM's abandonment of the GAF scale but before the ALJ's decision in this action, the SSA issued internal instructions to agency adjudicators stating the SSA will include GAF ratings as medical evidence and consider them medical opinions if from an acceptable medical source but explaining problems with using GAF ratings to evaluate disability and cautioning GAF ratings must be supported by other evidence, GAF ratings are never dispositive of severity, "there is no correlation between GAF scores and the B criteria in the mental disorders listings," and adjudicators must explain reasons for reliance on them. *See* Soc. Sec. Admin., Global Assessment of Functioning (GAF) Evidence in Disability Adjudication, Administrative Message (AM)–13066 §§ D, E (July 22, 2013). For GAF ratings by treating sources, the instructions state adjudicators must "provide good reasons" in decision notices for not giving them controlling weight. *Id.* § E. The instructions explain that because a GAF rating is only a "snapshot," it "does not provide a reliable longitudinal picture of the claimant's mental functioning for a disability analysis" unless the clinician "clearly explains the reasons behind his or her GAF rating, and the period to which the rating applies." *Id.*

The ALJ's reliance on Dr. Keiter's GAF rating of Head despite indication it applied only to the "current" period (the period around December 2010 when she conducted the evaluation), Tr. 521, and the ALJ's correlation of the GAF rating and the paragraph B criteria, Tr. 27–28, possibly supplement the reasons why reversal

Regarding treating source Dr. Sims, the ALJ stated the weight he was giving her GAF rating of 55 ("The GAF score assigned to the claimant by Dr. Sims is given little weight," Tr. 28) but failed to state the weight he was giving Dr. Sims's opinions about Head's mental impairments, including diagnoses (depression (not otherwise specified), mood disorder (not otherwise specified), and generalized anxiety disorder (rule out psychotic disorder)), Tr. 750, 754), and prognosis (poor to fair, Tr. 754, 756), even though he had stated the weight he was giving Dr. Keiter's GAF rating and, separately, the weight he was giving her opinions about Head's mental impairments. *See generally* Tr. 28. Regarding state agency consultants Drs. Wiener and Dow, the ALJ stated the weight he was giving their assessments that Head's affective disorder is "severe" ("little weight," Tr. 28) but did not explain why, instead merely stating, "The undersigned finds that affective disorder is a non-severe impairment. The undersigned does agree with [them] that the claimant is not disabled." Tr. 28. Those constitute no or insufficient explanations.

An ALJ's determination may be implicit, but the "implication must be obvious to the reviewing court." *Tieniber v. Heckler*, 720 F.2d 1251, 1255 (11th Cir .1983). The Court cannot infer the reasons the ALJ gave little weight to Dr. Sims's GAF rating, unspecified weight to her other opinions, or little weight to Dr. Wiener's and Dr. Dow's opinions from the reasons he gave great weight to Dr. Keiter's opinions

---

and remand are warranted, but Head does not argue those decisions were erroneous. *See generally* Doc. 15. It is unnecessary to decide if they were and, concomitantly, whether the Court may consider internal instructions not found in the widely available Program Operations Manual System (POMS), Social Security Rulings, and Acquiescence Rulings to decide the case.

(consistency with the medical evidence, consistency with Head's testimony, the GAF rating of 75, and Head's "presentation" at the hearing, Tr. 27) because they are not obvious, particularly given that Dr. Keiter's opinions are not that different from the opinions of the other medical sources and arguably more favorable to a finding of mental limitations. *Compare* Tr. 520 (Dr. Keiter's opinions Head has adjustment disorder with depressed mood, can understand and follow simple instructions, may "have difficulties at times making appropriate decisions and relating adequately with others," and has a "fair" prognosis) *with* Tr. 76, 77, 80, 89, 90, 93 (Dr. Wiener's opinions Head has severe affective disorders, is moderately limited in her ability to carry out detailed instructions, moderately limited in her ability to maintain attention and concentration for extended periods, and limited to routine tasks with brief lapses in focus); Tr. 108, 112 (Dr. Dow's opinions similar to Dr. Wiener's opinions); *and* Tr. 751, 754 (Dr. Sims's opinions Head has depression (not otherwise specified), generalized anxiety disorder (rule out psychotic disorder), and mood disorder (not otherwise specified) and a "poor to fair" prognosis).

The ALJ's failure to state the weight he was giving Dr. Sims's opinions (beyond the GAF rating) and failure to sufficiently explain his reasons for giving the little weight to Dr. Keiter's, Dr. Wiener's, and Dr. Dow's medical opinions constitute reversible error. *See, e.g., MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986) (failure to state with particularity weight given to opinions and reasons why constitutes reversible error); *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) (failure to clearly articulate reasons for giving less weight to treating source's opinion

constitutes reversible error).[24]

The Commissioner contends the ALJ did not have to "specifically discuss[] every sentence of Dr. Keitel's [sic] opinion and detail why he did or did not accept each limitation." Doc. 18 at 13 n.6. Although that may be true as a general proposition, here, without explanations of two glaring issues (exclusive reliance on opinions predating the alleged onset date by more than 17 months and failure to find Head has the limitations therein), the ALJ failed to satisfy the requirement he "state with particularity" the reasons he was giving great—exclusive—weight to Dr. Keiter's opinions on mental limitations. *See* *Winschel*, 631 F.3d at 1179 (quoted); *see*

---

[24]An error is harmless if it does not affect the outcome or a party's substantial rights. *Perry v. Astrue*, 280 F. App'x 887, 893 (11th Cir. 2008). As this Court has observed,

> Failure to state the weight given to opinion evidence from a medical source will, in very limited circumstances, result in harmless error. *Caldwell v. Barnhart*, 261 F. App'x 188, 190 (11th Cir. 2008) (unpublished) ("An ALJ's failure to state with particularity the weight given different medical opinions is reversible error. When, however, an incorrect application of the regulations results in harmless error because the correct application would not contradict the ALJ's ultimate findings, the ALJ's decision will stand.") (citation omitted); *Wright v. Barnhart*, 153 F. App'x 678, 684 (11th Cir. 2005) (unpublished) ("Although the ALJ did not explicitly state what weight he afforded the opinions of [several physicians], none of their opinions directly contradicted the ALJ's findings, and, therefore, any error regarding their opinions is harmless.")

*Vermillion v. Comm'r of Soc. Sec.*, No. 6:12-CV-1572-ORL-GJK, 2014 WL 906119, at *4 (M.D. Fla. Mar. 7, 2014) (unpublished). Because the residual functional capacity contains no mental limitation, the weight given to the medical opinions on mental impairments could result in a more restrictive residual functional capacity and the need for a vocational expert to opine on Head's ability to work. The errors on the second issue are not harmless, and the Commissioner does not contend otherwise. *See generally* Doc. 18 at 9–16.

*also* 20 C.F.R. §§ 404.1520a(e)(4), 416.920a(e)(4) ("The decision must show the significant history … and the functional limitations that were considered.").

Pointing to medical and other evidence, the Commissioner contends substantial evidence supports: the ALJ's decision to give great weight to Dr. Keiter's opinions; the ALJ's decisions to give little weight to Dr. Sims's GAF rating, Dr. Dow's opinions, and Dr. Wiener's opinions; the residual functional capacity; and the finding Head can perform her past relevant work. Doc. 18 at 12–13, 14–16. The Commissioner further argues the ALJ did not have to incorporate all of Dr. Keiter's opinions into the residual functional capacity or to defer to Dr. Dow's and Dr. Wiener's opinions that Head's affective disorders are severe. Doc. 18 at 13–14. But those arguments do not address the error—the ALJ's failure to adequately state or explain the weight he was giving the medical opinions. "Unless [an ALJ] has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981) (internal quotations omitted). Without the required sufficient explanation, whether substantial evidence supports the findings is not at issue.

The Commissioner contends, "Plaintiff challenges the ALJ's determination on [Dr. Sims's GAF rating] but fails to show how the GAF [rating] … proved that she had more limited mental functioning." Doc. 18 at 11. That contention is incorrect. Head challenges not the score itself or whether substantial evidence supports it, but

the ALJ's failure to state the weight he was giving other aspects of Dr. Sims's opinions. *See* Doc. 15 at 12–13.

Regarding the ALJ's exclusive reliance on Dr. Keiter's December 2010 opinions, the Commissioner correctly observes an ALJ must consider all evidence in the record and is not prohibited from considering evidence that predates an alleged onset date. Doc. 18 at 13 n.6. While the ALJ could consider Dr. Keiter's December 2010 opinions, to satisfy the particularity requirement, he at least had to explain their continued relevancy in light of the exclusive weight he had given them; Dr. Keiter's reference in them to Head's "current" level of functioning, Tr. 521; the availability of a large amount of medical evidence concerning mental health postdating the alleged onset date, including from a treating source, *e.g.*, Tr. 76, 77, 80, 83, 89, 96, 112, 115, 751–54; and the ALJ's seemingly inconsistent rejection of limitations in the September 2010 "Third Party Function Report" because it had been prepared when Head had been working, Tr. 31.

The Commissioner contends "the record as a whole, which documents relatively sparse, conservative mental health treatment with medication and no inpatient treatment, does not demonstrate that the Plaintiff's condition worsened after Dr. Keiter's consultative examination." Doc. 18 at 14. A court will not affirm just because some rationale might have supported the ALJ's decision. *Owens v. Heckler*, 746 F.2d 1511, 1516 (11th Cir. 1984). Applying that principle, the Court should not substitute the Commissioner's contention for the ALJ's failure to provide rationale. Besides, some evidence arguably shows worsening—something the Commissioner

should decide in the first instance. *Compare, e.g.,* Tr. 950 (July 2012 appointment noting sad affect and depressed mood but otherwise normal observations), *with* Tr. 951 (October 2012 appointment noting poor eye-contact, slow speech, angry mood, and sad, flat, and angry affect but otherwise normal observations).

The Commissioner contends reversal and remand is unwarranted because neither of Dr. Sims's treatment notes the ALJ summarized in his decision imposed any mental limitation and argues, "[e]ven assuming Plaintiff had the diagnosed conditions, she still failed to show that those conditions caused disabling limitations." Doc. 18 at 11−12. The Eleventh Circuit recently rejected a similar position by the Commissioner in *Baez v. Comm'r of Soc. Sec.*, No. 15-13941, 2016 WL 4010434 (11th Cir. July 27, 2016) (unpublished).

In *Baez*, the claimant argued that "the ALJ erred in failing to articulate the weight he accorded the medical opinions." *Id.* at *3. The Commissioner argued that the ALJ did not err concerning a treating source because his "records included only diagnoses and did not establish … physical limitations." *Id.* at *4. The Eleventh Circuit was "unpersuaded." *Id.* It explained, "Medical reports should include medical source statements that discuss what a claimant can still do despite any impairment. That said, the lack of the medical source statement will not make the report incomplete. Thus, the absence of a medical source statement does not relieve the ALJ from the duty to assign substantial or controlling weight to the opinion of a treating physician absent good cause to the contrary." *Id.* (internal citations and quotation marks omitted). It concluded, "Even without the medical source statement, [the

treating source's] records were comprehensive. The ALJ needed to assign some weight to [his] opinion as a treating physician and, if necessary, explain why that weight is less than substantial or controlling." *Id.* (citing *Winschel*, 631 F.3d at 1179). Under the same rationale, the absence of a specific mental limitation in Dr. Sims's opinions did not obviate the ALJ's duty to state the weight he was giving her opinions beyond merely stating the weight he was giving the GAF rating she assigned among the many other findings in her notes.

The ALJ did not apply the correct legal standards for evaluating medical opinions. That failure warrants reversal and remand.

## VIII.  Recommendation

I recommend:

(1)     **reversing** the Commissioner's decision under sentence four of 42 U.S.C. §§ 405(g) and 1383(c)(3);

(2)     **remanding** the case to the Commissioner to state with particularity the weight given to each medical opinion and the reasons for that weight, and to take any other necessary action; and

(3)    **directing** the Clerk of Court to enter judgment in favor of Helen
        Harrietta Head and close the file.[25]

**Entered** in Jacksonville, Florida, on August 10, 2016.

_____

PATRICIA D. BARKSDALE
*United States Magistrate Judge*

c:    Counsel of Record
      The Honorable Marcia Morales Howard

---

[25]"Within 14 days after being served with a copy of [a report and
recommendation on a dispositive motion], a party may serve and file specific written
objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b)(2).
"A party may respond to another party's objections within 14 days after being served
with a copy." *Id*. A party's failure to serve and file specific objections to the proposed
findings and recommendations alters the scope of review by the District Judge and
the United States Court of Appeals for the Eleventh Circuit, including waiver of the
right to challenge anything to which no specific objection was made. *See* Fed. R. Civ.
P. 72(b)(3); 28 U.S.C. § 636(b)(1)(B); 11th Cir. R. 3-1;  Local Rule 6.02.